NORMAN L. JETTY AND BILLIE JETTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jetty v. Commissioner
Docket No. 5383-79.
United States Tax Court
T.C. Memo 1982-378; 1982 Tax Ct. Memo LEXIS 363; 44 T.C.M. (CCH) 373; T.C.M. (RIA) 82378; July 7, 1982. *363 Petitioner-husband was president of a corporation in which he owned no stock. He paid for blazer and vest sets to be worn by those employees who were to represent the corporation at a trade show. He did not apply for reimbursement of his expenditure. Held: the expenditure is deductible by petitioners as an ordinary and necessary expense of petitioner-husband's trade or business as an employee. Edward D. Urquhart, for the petitioners. Juan *364 F. Vasquez, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1975 in the amount of $2,700.75. After a concession by petitioners, the issue for decision is whether petitionrs may deduct under section 162(a) [1] the cost of blazer and vest sets bought by petitioner Norman L. Jetty for employees of the corporation of which he was president. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Norman L. Jetty (hereinafter sometimes referred to as "Jetty") and Billie Jetty, husband and wife resided in Pasadena, Texas. During 1975, Jetty was president and chief operating officer of Jetty-Fagg, Inc., and his trade or business was that of being an employee of Jetty-Fagg, Inc. During 1975, Jetty-Fagg, Inc., was the parent of the following wholly-owned *365 subsidiaries: Jetty Products, Inc.; J. F. Thermal, Products, Tulsa; Pulsation Specialists, Inc., Houston; Pulsation Specialists, Fort Worth; Ocanna, S.A.; and J-F Pumps, Inc. (hereinafter sometimes collectively referred to as "the Jetty corporations"). The Jetty corporations manufactured oil field equipment. The Jetty corporations' main customers were oil field equipment suppliers. Jetty did not own any stock in any of the Jetty corporations. Jetty's brother, Charles E. Jetty, Jr., who was the chairman of the board and chief executive officer of Jetty-Fagg, Inc., during 1975, is the majority stockholder of Jetty-Fagg, Inc. On February 1, 1974, Jetty was vice president of Jetty-Fagg, Inc., and a member of its board of directors, as well as president of Jetty Products Division. [2] At a board of directors meeting that day, Jetty was elected senior vice president of Jetty-Fagg, Inc., and reelected president of Jetty Products Division. His salary was set at $2,000 per month. The board of directors established two bonus pools. One bonus pool, for salaried employees of Jetty Products Division, was to be 20 percent of the net before-tax profit. Ten percent was to go to Jetty *366 and the remaining 10 percent was to be shared by the other salaried personnel in proportion to their salaries. The other bonus pool was to be for the president and the secretary/treasurer of Jetty-Fagg, Inc., and one or two others. The amount in this pool was to be 10 percent of combined profits in excess of $100,000 (after deduction of other profit bonuses). On November 4, 1974, Jetty was elected president and chief operating officer of Jetty-Fagg, Inc., and his salary was set at $3,000 per month. It was agreed that the increase in salary would be considered partial payment of concurrently earned bonus. In Jetty's case, salary payments in excess of $1,500 per month were to be treated as advances against his bonus. During 1975, Jetty-Fagg, Inc., paid Jetty a salary of $3,000 per month. On April 3, 1975, the board of directors of Jetty-Fagg, Inc., voted that the amount to be set aside for the corporate officers' bonus pool for the year ending September 30, 1975, would be 10 percent of the Jetty corporations' consolidated net profit before taxes. *367 Jetty's bonus in 1975 was $23,606; his total compensation from Jetty-Fagg, Inc., in 1975 was $59,606. As president and chief operating officer of Jetty-Fagg, Inc., Jetty was in charge of the operations of manufacturing, marketing and selling, customer relations, and purchasing. Policy in any of these operations had to be correlated with the other operations. Jetty was given the job of turning around a loss company and making it into a profitable company; in this he was expected to exercise business judgment and discretion. In December 1975, Jetty voluntarily bought 27 blazer and vest sets which matched the colors on Jetty-Fagg, Inc.'s stationery. Jetty paid $6,725 for these sets. He bought them in order to have key company personnel wear them at the 1976 International Petroleum Exposition in Tulsa, Oklahoma (hereinafter sometimes referred to as "the Tulsa show"), and at subsequent trade shows. The Jetty corporations were represented at the Tulsa show by Jetty and the 27 other employees who were given the blazer and vest sets by Jetty. Jetty-Fagg, Inc., budgeted about $40,000 for the Tulsa show. Jetty-Fagg, Inc., paid for the cost of its display at the Tulsa show and *368 paid for all traveling, lodging, and meals expenses incurred by Jetty and the other 27 employees of the Jetty corporations attending the Tulsa show. A number of Jetty-Fagg, Inc.'s competitors sent employees to the Tulsa show. These employees wore matching attire similar to the blazer and vest sets bought by Jetty. Jetty-Fagg, Inc., clearly benefited from the blazers and vests since they enhanced Jetty-Fagg, Inc.'s display at the Tulsa show. Jetty did not file a claim for reimbursement with Jetty-Fagg, Inc., for the $6,725 he spent on the blazer and vest sets, nor did he seek prior approval for reimbursement of this expenditure. Jetty believed that the blazer and vest sets would enhance Jetty-Fagg, Inc.'s image at the Tulsa show and also would enhance his image. Jetty believed that his expenditure for the blazer and vest sets would be reimbursed through the Jetty corporations' bonus system, in that it would lead to his receiving larger bonuses. Jetty did not believe it was appropriate for him to ask for reimbursement of his expenditure, in addition to the enhancement in bonus payments that he believed would result from the blazer and vest sets. Jetty did not intend to *369 make personal gifts of the 27 blazer and vest sets. Jetty-Fagg, Inc.'s employee expense reimbursements policy manual, as in effect for 1975, provides (at par. 1.1) that "It is the policy of the Company that all legitimate expenses incurred in the conduct of Company business be allowed at cost and that reimbursement of reported expenses be accomplished with a minimum of delay." The policy manual defines "legitimate expenses" (at par. 4.1) as "All necessary traveling and other expenses incurred while engaged in conducting Company business." The policy manual provides guidelines for many types of circumstances, specifically relocation, travel, transportation, entertainment, and business meetings. The Jetty corporations had reimbursed Jetty for every expense for which he had sought reimbursement. Jetty joined Jetty-Fagg, Inc., in November 1972; his relationship with Jetty-Fagg, Inc., ended in September 1976. He had offered his resignation; it was refused, and Jetty was discharged. Subsequently, Jetty operated a company called Pan Am Forge and Tube, a sales representative company selling steel products to the same industry as does Jetty-Fagg, Inc. The contracts Jetty made and *370 the impressions that others in the industry had of Jetty while he was employeed by Jetty-Fagg, Inc., and in particular while he participated in the Tulsa show, contributed to Jetty's business with Pan Am Forge and Tube. Jetty spent $700 in 1975 for fruit baskets and gift certificates which he gave to 20 people as Christmas gifts. Four of the recipients of the fruit baskets (which cost $35 apiece) were among the 27 who received the blazer and vest sets. Petitioners deducted this $700 as a miscellaneous expense on their 1975 Federal income tax return. Respondent disallowed $200 of this deduction, and petitioners concede this $200 disallowance. OPINION The issue for decision is whether Jetty's expenditure for 27 blazer and vest sets is deductible by petitioners under section 162(a) as an "ordinary and necessary expense paid or incurred during the taxable year in carrying on [Jetty's] trade or business" as an employee of Jetty-Fagg, Inc. Respondent maintains that Jetty's expenditure was properly an expense of Jetty-Fagg, Inc., and not of Jetty, and that Jetty has failed to show that he would not have been reimbursed by Jetty-Fagg, Inc., if he had applied for reimbursement. *371 Petitioners assert that Jetty expected to be reimbursed through the Jetth-Fagg, Inc., bonus program and that the expenditure was properly an expense of Jetty's trade or business. We agree with petitioners. Jetty's expenditure for the blazers and vests was not made to enhance an investment--he did not own any stock in any of the Jetty corporations. No suggestion has been made that Jetty's expenditure constituted a gift to either (1) the recipients of the blazers and vests or (2) any of the Jetty corporations. No suggestion has been made that Jetty's expenditure should be capitalized and so is not deductible as an expense in 1975. A significant portion of Jetty's compensation from Jetty-Fagg, Inc., consisted of a bonus dependent on Jetty-Fagg, Inc.'s profits. Jetty, as president and chief operating officer of Jetty-Fagg, Inc., had a great portion of the responsibility of seeing to it that there were profits for him to share in. The Tulsa show was an opportunity to impress the industry, both Jetty-Fagg, Inc.'s customers and its competitors. Impressions made at the Tulsa show, respondent's witness testified, would be of Jetty, himself, and not only of Jetty-Fagg, Inc. In *372 , a Court-reviewed case, we held that a taxpayer could deduct amounts that he spent to entertain salesmen that he supervised, where the amounts "were spent by him in an honest and legitimate effort to do a better job by creating and maintaining friendly relations between himself and the salesmen upon whom he had to depend not only for his bonus, but for the selling in the territory under his supervision." (.) We are satisfied that the expenditure in the instant case stands on the same tax footing as the expenditures for which deductions were allowed in Christensen. See also . We hold that Jetty's expenditure was an expense of his trade or business. We next consider whether Jetty's expenditure was ordinary and necessary. Although we may take it that it is not ordinary to pay the expense of someone else's business (see , we have held that Jetty's expenditure was an expense of his own trade or business. The parties agree that Jetty-Fagg, Inc.'s competitors outfitted *373 their employees similarly at the Tulsa show. We conclude that the making of such an expenditure was an ordinary exercise of business judgment. See .Similarly, under the circumstances herein, we think it was necessary. However, respondent maintains that it was not ordinary and necessary for Jetty to spend the money out of his own pocket because he could have been reimbursed. A trade or business expense deduction is not allowable to an employee to the extent that the employee is entitled to reimbursement from his or her employer for an expenditure related to his or her status as an employee. , affg. a Memorandum Opinion of this Court; [3], affd. without opinion ; Stolk v. Commissioner, 40 T.C. T.C. 345, 356 (1963), affd. ; . Jetty-Fagg, Inc.'s policy manual on reimbursements appears to be broad, but its specific rules *374 deal with relocation, travel, transportation, entertainment, and business meetings. It is, thus, not clear from our inspection of the manual whether Jetty would have been reimbursed if he had applied therefor. Respondent's witness, who in 1975 was in charge of auditing claims for reimbursement, testified that he did not know whether Jetty would have been reimbursed if he had applied therefor. Jetty was expected to exercise business judgment in a variety of matters. Jetty testified that he did not think he should apply for reimbursement. About nine months later, Jetty's relationship with Jetth-Fagg, Inc., had deteriorated to the point that Jetty was discharged. The instant case is to be distinguished from In Heidt, the expenditures involved were for Heidt's use of his private automobile to go to airports or railway stations in the course of trips on company business or to transport people who came to visit his employer's headquarters. Heidt's employer had a general policy of reimbursing its executives and employees for automobile expenses and written rules of the employer's administrative committee even specified the rate, *375 in cents per mile, at which such automobile use would be reimbursed. It was concluded in Heidt "that the case as presented is one where the taxpayer voluntarily gave up reimbursement that he was entitled to receive and could have received if he had claimed it." (.) Under these circumstances, "where they [the expenses] have a direct bearing on the amount of his [petitioner's] compensation", the cases which speak in terms of imposing a requirement that the expenditures be a condition of employment are distinguishable. See . [4] Cf. . Although the matter is not entirely free from doubt, we conclude on the basis of the record in the instant case that petitioners have satisfied their burden of proving that Jetty did not turn his back on reimbursement he was entitled to receive. Accordingly, we conclude that his expenditure is an ordinary and necessary expense of his trade or business. We hold for petitioners. Because of petitioners' concession as to the fruit baskets *376 and gift certificates, [5]
Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. On October 1, 1975, Jetty Products Division was incorporated and became Jetty Products, Inc., one of the Jetty corporations.↩
3. .↩
4. See Fairburn v. Commissioner,↩ T.C. memo. 1969-77
5. We note that our conclusion that the blazer and vest sets expenses are deductible is consistent with the parties' agreement disallowing $200, but leaving undisturbed the remaining $500 of petitioners' deduction on account of Jetty's business gifts of fruit baskets and gift certificates to 20 people. See section 274(b)(1) limiting the deduction for such gifts to no more than $25 for any individual recipient.That is, Jetty's trade or business as president of Jetty-Fagg, Inc., supports deductions of business gifts without respondent disallowing the deductions by maintaining that the expenditures were reimbursable. The blazer and vest sets do not appear to have been intended as business gifts; in any event, respondent does not contend that section 274 applies to the blazer and vest sets deduction.↩